CITY OF GRAND RAPIDS *v.* ELLIS.

1. EMINENT DOMAIN — FUNCTION OF JURY — APPORTIONMENT OF AWARD.

   Jury in condemnation proceedings is required to award compensation for the property taken, apportioning to the parties in interest, such as owners and tenants, such portions of the compensation as it shall deem just (CL 1948, § 213.30).

2. SAME—LANDLORD AND TENANT—INSTRUCTIONS AS TO FAIR MARKET VALUE—EVIDENCE.

   Court's instruction to jury in condemnation proceedings that permitted it to base determination of value on the fair market value of the leasehold and permitted jury to deduct such value from the value of the fee *held*, not error, where there was testimony as to the fair market value of the leasehold and the appellant owners failed to object to the instructions before or after they were given to the jury and at no time submitted requests to charge to the court (CL 1948, § 213.30).

3. SAME—EVIDENCE OF VALUE—OFFER TO PURCHASE.

   Offer to purchase premises, taken in condemnation proceedings, was properly excluded from evidence to show value of the property, where made by a corporation with evident lack of financial ability to carry out the terms of the offer, a lack of *bona fides* being disclosed.

Appeal from the Superior Court of Grand Rapids; Vander Ploeg (Claude), J. Submitted February 2, 1965. (Calendar No. 44, Docket No. 50,199.) Decided May 10, 1965.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 18 Am Jur, Eminent Domain §§ 232, 239.
   Are different estates or interests in real property taken under eminent domain to be valued separately, or is entire property to be valued as a unit and the amount apportioned among separate interests? 69 ALR 1263, 166 ALR 1211.
[3] 18 Am Jur, Eminent Domain §§ 351, 352.

Petition by the City of Grand Rapids against Robert Ellis, Shirley Brooks Peterson, Dudley H. Waters, and Rosalie Behr Waters to condemn private property for downtown urban renewal project. Trial only on issue of compensation. From verdict and award for defendants, defendant owners appeal. Affirmed.

*Dutchess, Mika, Miles, Meyers & Snow (Wendell A. Miles,* of counsel) and *Rhoades, Garlington, Mc-Kee & Boer (Dale W. Rhoades,* of counsel), for plaintiff.

*Warner, Norcross & Judd (Harold S. Sawyer* and *Thomas R. Winquist,* of counsel), for defendants Peterson and Waters.

DETHMERS, J.    These are condemnation proceedings, brought by plaintiff city to acquire properties of defendants-appellants and others for use in a downtown urban renewal project. The parties hereto having stipulated not to contest the element of necessity, the trial revolved solely around the issue of just compensation to be awarded. This appeal is from an order of the superior court of Grand Rapids confirming the jury verdict and award. It is taken by defendants, who are hereafter referred to as owners. They owned lands on which were located a hotel and annex buildings and a garage structure. They had leased most of the hotel and annex to a husband and wife, hereinafter called the tenants. The tenants have not joined in this appeal, but moved, unsuccessfully, to have it dismissed.

A professional appraiser testified for plaintiff that the value of the 3 properties, hotel, annex and garage, was $260,000. The owners produced another who testified for them that, in his opinion, the value was $410,000. The city assessor had appraised the prop-

erties for tax purposes at $397,563. The owners were prevented by the court from introducing into evidence a written offer to purchase for $500,000, which evidence had been suppressed by order of the court, on plaintiff's motion, in a hearing prior to trial. One of the tenants testified that they had remodeled and put improvements into the hotel which had cost them $59,596.50 and had a present value of $50,765.06, and that the gross room rental from the hotel had increased since commencement of their occupancy. The court instructed the jury that they should award the tenants such compensation as they should deem just and deduct it from the value of the premises for which an award was to be made to owners. The jury made an award of $275,000 to the owners and $37,000 to the tenants. The tenants, apparently content, do not appeal. The owners are not content and do appeal.

Two questions are raised on appeal by the owners:

"1. Did the trial court err in instructing the jury to deduct the award to the tenants from that of the owners when the record contained no evidence of the fair market value of tenants' leasehold interest?

"2. Should the trial court have permitted evidence of an offer to purchase as reflective of the value of appellants' property?"

CL 1948, § 213.30 (Stat Ann 1958 Rev § 8.20), provides, with respect to condemnation of property under the powers of eminent domain, that the jury shall award to the property owners such compensation therefor as it shall deem just and that if it be subject to a lease the jury shall apportion to the parties in interest, including owners and tenants, such portions of the compensation as it shall deem just. Defendants concede in this connection that, when there are proofs from which the jury can determine the fair market value of the fee and also of the leasehold,

it is proper to deduct the latter from the former to
arrive at the remainder to be awarded to the owner
of the fee.   They contend that in this case there were
no proofs of the fair market value of the leasehold
but complain and assign as error that the court, none-
theless, instructed the jury to apply the fair market
value test in determining the award to be given the
tenants and deduct it from the award to the owners.
They say that the only proofs as to the tenants' inter-
est, as above related, amounted to a showing of ac-
tual value as distinguished from fair market value,
and that such actual value of the leasehold has no re-
lationship to the value of the fee and may not be de-
ducted therefrom in making the award to the owners
of the fee.   It is to be observed, however, that the
tenant did not testify only as to the original cost to
him of remodeling and improvements made by him
to the hotel, and the depreciation which he estimated
should be applied, as a basis for a so-called "cost-
depreciated" approach to determining the value of
the leasehold, leading to a result which defendants
term "actual value" rather than "fair market value".
He also testified as to the gradually increasing rev-
enues to the tenants as a result of that expenditure
and their management.   Next, he testified as to the
annual rental he was required to pay under the lease,
and then as to the amounts annually realized by them
from operation of the leased property during the
last 5 years preceding trial.   We do not think it can
be said that the jury was presented with no evidence
on which to base a determination of the fair market
value of the leasehold.   We see no error in the court's
instruction in this respect.   We may add that counsel
for the owners indicated that he saw none either
when the court, before charging the jury, called coun-
sel into chambers and showed them the instructions
which it was going to give and later did give, nor at
the conclusion of instructing the jury, and at no time

submitted requests to charge on this matter to the court. We find no error, accordingly, on this point.

Was it error for the court to suppress the evidence of offer to purchase before trial and to refuse to receive it in evidence on trial as reflective of the value of the property involved?

Owners cite *City of Kalamazoo* v. *Balkema,* 252 Mich 308, as holding that admissibility in evidence in condemnation proceedings of an offer to purchase depends, *inter alia,* on the offer being *bona fide.* They then set forth in their brief the quotation in this Court's opinion in *Balkema* taken from *Sharp* v. *United States,* 191 US 341 (24 S Ct 114, 48 L ed 211), as follows:

" 'Upon principle, we think the trial court was right in rejecting the evidence. It is, at most, a species of indirect evidence of the opinion of the person making such offer as to the value of the land. He may have so slight a knowledge on the subject as to render his opinion of no value, and inadmissible for that reason. He may have wanted the land for some particular purpose disconnected from its value. Pure speculation may have induced it, a willingness to take chances that some new use of the land might in the end prove profitable. There is no opportunity to cross-examine the person making the offer, to show these various facts. Again, it is of a nature entirely too uncertain, shadowy and speculative to form any solid foundation for determining the value of the land which is sought to be taken in condemnation proceedings. If the offer were admissible, not only is it almost impossible to prove (if it exists) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible, to show. To be of the slightest value as evidence in any court, an offer must, of course, be an honest offer, made by an individual capable of

forming a fair and intelligent judgment, really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. Whether the owner himself, while declining the offer, really believed in the good faith of the party making it and in his ability and desire to pay the amount offered, if such offer should be accepted, or whether the offer was regarded as a mere idle remark, not intended for acceptance, would also be material upon the question of the *bona fides* of the refusal. Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light upon the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value, and they are unsatisfactory, easy of fabrication, and even dangerous in their character as evidence upon this subject. Especially is this the case when the offers are proved only by the party to whom they are alleged to have been made, and not by the party making them. There is no chance to cross-examine as to the circumstances of the party making the offer in regard to good faith, et cetera.'"

In the *Balkema Case* this Court said (p 311):

"In order to establish market value by an offer, one must at least show that there has been a *bona fide* offer made for the property. If this were not the rule, offers might be secured in an amount far in excess of the real value of the property in question. Witnesses testifying to what they would give for property would be secure in the knowledge and belief that they would not be bound to carry out the offer. To admit such testimony might open the door to perjury.

"In the case of *Perkins* v. *People,* 27 Mich 386, Mr. Justice COOLEY, speaking for the Court, said [p 388]:

" 'What land has sold for may sometimes, and under some circumstances, be very satisfactory evidence of value; but testimony as to what has been offered for it, is so much open to suspicion and so inviting to fraud, unless the offer was at a judicial or other public sale, or under other circumstances furnishing like security of good faith in making it, that it must generally be very untrustworthy and unreliable.' "

The offer to purchase for $500,000 was made by a corporation whose annual report for the year when it was made showed assets of $831.84 in cash and $21,486.65 in receivables. Plaintiff says that this evident lack of financial ability to carry out the terms of its offer, to the tune of $500,000, discloses a lack of *bona fides* and that, hence, under *Balkema,* the offer was not admissible in evidence to show the value of the property. Owners counter this with the testimony of the corporation's president that, if necessary, he would have arranged for the necessary finances. Under the written offer he was not personally obligated to do so, nor does the record disclose that he was, under any other agreement or for any other reason, so obligated. We cannot say that the court was in error in finding that, thus, the owners were left without such showing of *bona fides* of the offer as to make it admissible.

Order confirming the verdict and award of the jury is affirmed, with costs to plaintiff.

T. M. KAVANAGH, C. J., and KELLY, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.